## NELSON *vs.* BLANCHFIELD.

So far as the facts upon which an order of arrest, in an action of tort, is based are concerned, the court will, in ordinary cases, allow the order to stand, and abide the trial of the issues. The truth or falsity of such facts should never be decided on a motion.

. But where, after the perpetration by the defendant of certain alleged frauds, in the purchase of stock for the plaintiff and refusing to transfer the same to him or to refund the money advanced for such purchase, there was a settlement between the parties, and the plaintiff accepted the defendant's note for $700, 100 shares of a specified stock, and a due-bill for 200 shares of the same stock, giving a receipt stating that it was a "receipt and settlement for all claims" which he held against the defendant; *Held* that this was a condonation of the tort, and a waiver of the plaintiff's right to arrest the defendant; and that it was a proper case for vacating the order of arrest, on motion.

THE plaintiff, on or about the 7th day of October, 1868, employed the defendant, who had represented himself to the plaintiff 'as a "mining stock broker," and a member of the New York Mining Stock Board, to purchase for him, for cash, two hundred shares' of Combination Silver Mining stock, and for that purpose gave him $1200, which was more than sufficient, at the time, to purchase said stock. The defendant bought the stock through some other person, he not being a member of the Board of Mining Stock Brokers, but refused to surrender or deliver the same to the plaintiff when requested so to do, upon any terms, notwithstanding he was offered payment of any amount he might claim to be due him. Before the defendant thus refused to give the plaintiff the stock purchased for him and with his money, the plaintiff, at the solicitation of the defendant, on the 31st day of December, 1868, lent him $500 to pay an amount the said defendant stated he had borrowed on the 200 shares purchased for the plaintiff, which the defendant swore he afterwards repaid. The defendant also alleged that he at the same time delivered to the plaintiff a promissory note for $700, a due-bill for two hundred shares of Combina-

tion Silver Mining Company stock, and one hundred shares of Combination Silver stock, and that the plaintiff received the same in full accord and satisfaction of all the matters before mentioned, and of all claims by said plaintiff against the defendant, for or on account of said matters, subject to any future accounting, and thereupon signed and delivered to the defendant a paper in words and figures following:

"New York, December 31st, 1868.

Received from E. F. Blanchfield, note for seven hundred dollars, due-bill for two hundred shares of Combination Silver stock and one hundred shares of Combination Silver stock. The above being a receipt and settlement for all claims which I hold against him, the said E. F. Blanchfield.

Due bill or call, not transferable.        M. L. NELSON.

Act. to be rendered."

The defendant alleged in an affidavit, that said purchases, sales and transactions were the only transactions of any kind then pending between the plaintiff and defendant; that said plaintiff had never requested or demanded of the defendant any further or other account of said transactions; that said note had never been presented to him for payment; that the plaintiff still holds said call or due-bill, and has never demanded the said two hundred shares of stock which it was agreed thereby to deliver, and that the two hundred shares of stock set forth in the plaintiff's first cause of action are the same two hundred shares mentioned in said paper, and are the only two hundred shares of stock for which the plaintiff can have any claim against the defendant; and that on a full and fair accounting of all said transactions, the plaintiff is indebted to him, and has no claim against the defendant for the amount of said note, or said shares of stock, or for any other matter whatsoever.

The plaintiff alleged, in his complaint, and an affidavit, that the defendant failed and refused subsequently either

to give the plaintiff his stock, or to repay him the money he had advanced. Upon this the plaintiff brought suit against him, and had him arrested and held to bail. Subsequently a motion was made to vacate the order of arrest, and upon this motion being denied an appeal was taken by the defendant.

*Horace Graves*, for the appellant. I. The complaint joins two causes of action, to one of which the remedy of arrest can be applied, and to the other of which that remedy cannot be applied. The order of arrest should have been vacated on that ground. (*Lambert* v. *Snow*, 9 *Abb.* 91. 17 *How.* 517. *McGovern* v. *Payn*, 32 *Barb.* 83. *Smith* v. *Knapp*, 30 *N. Y. Rep.* 581.) 1. In the second cause of action the complaint does not set forth that the money therein mentioned was to have been used in a *fiduciary capacity*, and it does not charge the defendant with representing that it would be so used, nor that it would be used for any specific purpose. It would not be inconsistent with the allegations of this complaint to suppose that the stock had been "turned," for the sole benefit of the defendant; that the loan of $500 was to pay off the defendant's private debt; and that for such a debt the stock had been hypothecated. That view of the case is strengthened by the agreement to return the money the next day, and by the affidavit of the defendant. The loan was not an advance of money from a principal to an agent, but it was an ordinary accommodation loan from the plaintiff to the defendant, in an independent capacity, and it has been repaid. (*Stoll* v. *King*, 8 *How.* 298. *Goodrich* v. *Dunbar*, 17 *Barb.* 644.) 2. This cause of action, in the strict meaning of the term, would not sustain the order of arrest, the grounds of which (if there are any) are the allegations of fraudulent representations. Those allegations are no part of the cause of action which is on contract, and they are improperly incorporated into the complaint since they are

extrinsic to the cause of action. (*McGovern* v. *Payn*, 32 *Barb.* 83. *Crandall* v. *Bryan*, 15 *How.* 48. ' *Smith* v. *Knapp*, 30 *N. Y. Rep.* 581.) The order of arrest cannot be said, in the words of the decisions, to "apply" to this cause of action on account of the fraudulent representations; the representation that the defendant was a broker, or a member of the mining board, however false it may have been, would not have induced the plaintiff to make a loan of the character which we have shown this to have been. Such a representation is not fraudulent within the meaning of the law; it is not material to the transaction. (*Green* v. *Gordon*, 4 *Scott's N. R.* 13. 3 *Man. & G.* 446. *Taylor* v. *Fleet*, 1 *Barb.* 471.) 3. If there is any ambiguity as to the nature of the cause of action, the court will determine, not what cause of action the plaintiff has intended to set forth, but rather what cause of action he must rely upon for recovery. (*Peel* v. *Elliott*, 7 *Abb.* 433. 28 *Barb.* 200. 16 *How.* 485.) 4. Not only must the order of arrest extend to all the causes of action, but the grounds of arrest as involved in all the causes of action must be the same, otherwise the order of arrest might be set aside with reference to one cause of action and stand with regard to the others, thus necessitating dissimilar judgments and dissimilar executions in the same action. The order of arrest states that the case is "*one* mentioned in section 179 of the Code." (9 *Abb.* 91. 17 *How.* 517. 32 *Barb.* 83. 30 *N. Y. Rep.* 581.)

II. 1. The plaintiff waived any right to arrest the defendant that he might otherwise have had, by accepting the defendant's note in settlement of all the transactions which were carried on between the plaintiff and defendant up to the 31st day of December, 1868. The note has never been returned, nor has the plaintiff ever offered to return it. In fact it does not appear, even from the plaintiff's affidavits, nor from the complaint, that the note was due

when this action was begun, nor that it is now due. (*Shipman* v. *Shafer*, 14 *Abb. Pr.* 449. *Merchants' Bank* v. *Dwight*, 13 *How.* 366. *Alliance Ins. Co.* v. *Cleveland*, 14 *id.* 408.)

2. At the time of accepting the said note, the plaintiff also accepted, in settlement, one hundred shares of the stock of the Combination Silver Mining Company, and a due-bill or call for another one hundred shares of the stock of said company, and thereby waived all right to arrest the defendant; inasmuch as he, the plaintiff, with full knowledge of the fraud, made and accepted a settlement of the very matters in which he claims to have been defrauded. (25 *N. Y. Rep.* 103.)

III. After the 7th day of October, 1868, all transactions between the plaintiff and defendant were on joint account. The parties to this action were copartners from that time, and consequently the form of the action should have been different, and the remedy of arrest ought not to have been resorted to. (*Cary* v. *Williams*, 1 *Duer*, 667.)

IV. In respect to the alleged fraudulent representations, and the alleged conversion of stocks and money, the preponderance of evidence is with the defendant. He denies, absolutely and unqualifiedly, the charges of the plaintiff, and other circumstances unite to make the allegations of the plaintiff appear improbable. (*Allen* v. *McCrasson*, 32 *Barb.* 662. *Brodsky* v. *Ihms*, 25 *How.* 471; 16 *Abb. Pr.* 251. *Mecklin* v. *Berry*, 23 *How.* 380.) The improbability of those allegations appears also from the fact that all the stock which was purchased was in the possession of the defendant for a very short time only. Mr. Partridge held it till he failed, when it went in with his assets, and consequently it is impossible that the stock should have been converted by the defendant. Besides, the plaintiff was indebted to the defendant at the time of settlement aforesaid.

V. The plaintiff ought to have been put on his guard

Nelson *v.* Blanchfield.

by the circumstances. Under such circumstances he was bound to make inquiries as to the truth of the allegations of the defendant. He could readily have informed himself, and neglected to do so, and is remediless. (*White* v. *Seaver*, 25 *Barb.* 236 ; 28 *N. Y. Rop.* 110. 2 *Pars. on Cont.* 773, 5*th ed., and cases cited, as follows: Moore* v. *Turbeville*, 2 *Bibb*, 602 ; *Saunders* v. *Hatterman*, 2 *Iredell*, 32 ; *Farrar* v. *Alston*, 1 *Dev.* 69 ; *Falton* v. *Hood*, 34 *Penn. Rep.* 365.)

*Sullivan & Bracken*, for the respondent. The decision of the court at special term, denying the motion to vacate the order of arrest herein, should not be reversed.

I. Because the defendant, in moving to vacate the order of arrest, moved in part upon the plaintiff's affidavits for the arrest, thereby admitting them to be true, and by so doing bound himself to abide by the facts as therein set forth.' (*Lovall* v. *Martin*, 21 *How.* 238. *Hathorne* v. *Hall*, 4 *Abb.* 227.)

II. The right to arrest the defendant in this action is derived from its very nature, and to vacate the order would be virtually trying the case. The whole object of the defendant is to show by his affidavits that no cause of action exists, and his desire is to try the cause upon affidavits, which is not allowable. (*Solomon* v. *Waas*, 2 *Hilt.* 179.)

III. When the facts constituting the cause of action, and the facts authorizing the arrest, are identical, the order of arrest will not be set aside on the merits, unless the defendant clearly makes out such a case as would call on the judge, at the trial, either to nonsuit the plaintiff or direct a verdict for the defendant. (*Barrett* v. *Gracie*, 34 *Barb.* 20. *Levins* v. *Noble*, 15 *Abb.* 475.)

*By the Court*, CLERKE, P. J. As to the facts upon which the order of arrest was based, and which constitute the gist of the action, we would, in ordinary cases, allow the

Nelson *v.* Blanchfield.

former to stand and abide the trial of the issues. Their truth or falsity, in an action of tort, should never be decided on a motion. But, in this case, after the perpetration of the alleged frauds, there was a settlement between the parties; the plaintiff accepting the defendant's note for $700, 100 shares of Combination Silver stock, and a due-bill for 200 shares of that stock. This was a waiver of his right to arrest the defendant, and a condonation of the tort.

The order should be reversed, with costs.

[NEW YORK GENERAL TERM, November 1, 1869. *Clerke, Sutherland* and *Cardozo,* Justices.]